**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **CHAE BROTHERS, LIMITED** ) | |
| **LIABILITY COMPANY d/b/a** ) | |
| **FIRESIDE NORTH LIQUORS,** *at al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | Civil No.: 1:17-cv-01657 (GLR) |
| ) | |
| **MAYOR AND CITY COUNCIL** ) | |
| **OF BALTIMORE,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**[PROPOSED] ESI DISCOVERY PLAN**

This Stipulation sets forth the agreement of the Mayor and City Council of Baltimore ("the City") and Plaintiffs (collectively, "the Parties") regarding the protocol for the production of documents, both hard-copy documents and electronically stored information, by and between the Parties in the above-captioned action (the "Litigation"). The Parties hereby stipulate as follows:

**A.     General**

1.     The Parties shall take reasonable and practicable steps to comply with the protocol set forth herein.

2.     To the extent reasonably possible, the production of Documents shall be conducted to maximize efficient and quick access to Documents and minimize related discovery costs

3.     Except as specifically limited herein, this Stipulation governs the production of discoverable Documents by the Parties during the Litigation.

4.     This Stipulation shall not enlarge or affect the proper scope of discovery in this Litigation, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation. Additionally, this Stipulation does not alter or expand the preservation obligations of the Parties.

5.     Subject to the Parties' objections and responses to requests for production of documents, all Documents that are responsive to discovery requests and not designated as privileged shall be produced in the manner provided herein. Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are

1

protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable. Additionally, nothing in this Stipulation shall be deemed to waive or limit any party's right to object to the production of certain electronically stored information on the ground that the sources are not reasonably accessible because of undue burden, relevance, or cost.

6. The Parties agree to abide by the terms of this Stipulation in good faith and they agree to promptly alert all other Parties concerning any technical or other problems associated with complying with this Stipulation.

7. Consistent with their obligations under applicable Federal and Local Rules, the Parties will attempt to resolve, in person, in writing (including e-mail) and/or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may apply to the Court for relief.

8. The Parties agree that the provisions in their Agreement to be Bound by Protective Order dated 5/22/2018 apply and further, that the Parties will comply with the obligations listed therein.

**B.     Definitions**

1. The term "Bates Number" means a unique number affixed or assigned to each page of a Document produced in the Litigation.

2. The term "Custodian" means a person with custody of Documents during, or prior to, the time of collection.

3. The term "Database" means a collection of related Electronic Data organized (often in rows, columns and tables) in an electronic environment for a particular purpose. Databases often perform various functions, including data analysis, data sorting and report generation. Microsoft Access and Oracle are common database platforms.

4. The term "Document" shall include both Hard-Copy Documents and Electronic Documents as defined herein.

5. The term "Electronic Data" means raw data stored in a Database, as defined herein.

6. The term "Electronic Document" means documents existing in electronic form at the time of collection, including but not limited to: e-mail, word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*, PowerPoint slides), spreadsheets (*e.g.*, Excel), and image files (*e.g.*, PDF).

7. The term "Hard-Copy Document" means documents existing in paper form at the time of collection.

8. The term "Load File" means a file provided with a production set of document images, metadata or other information that facilitates the loading/correlation of such information into/within a Receiving Party's document review platform.

9. The term "Metadata" means corresponding data about an Electronic Document that resides in the un-viewed area of an Electronic Document and is generally not seen when such a Document is printed (*e.g.*, date created, date sent, author, recipient).

10. The term "Native Format" means the format in which an Electronic Document was created and used.

11. The term "OCR" stands for Optical Character Recognition which involves the recognition of printed or written by a computer and makes a Hard-Copy Document searchable.

12. The term "Producing Party" means any Party to the Litigation that produces Documents under this Stipulation.

13. The term "Receiving Party" means any Party to the Litigation that requests or receives Documents under this Stipulation.

**C.   ESI Disclosures**

Within thirty (30) days of submitting this Stipulation to the Court, each party agrees to disclose the following:

1. <u>Custodians</u>. The parties will identify custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under his or her control. No more than 10 custodians need be identified by any party. In the event an opposing party identifies one or more custodians not named by the producing party under this paragraph, the producing party agrees to treat the custodian in the same manner as other custodians initially identified.

2. <u>Non-custodial Data Sources</u>. A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources</u>. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email and/or mobile device providers, "cloud" storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data</u>. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

**D.   Preservation of ESI**

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. With respect to preservation of ESI, the parties agree as follows:

      1.      Absent a showing of good cause by the Requesting Party, the parties shall not be required to, and expressly agree they have not and will not during the instant litigation, modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control.

      2.      All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under (D)(3) or (H)(1)-(2) below).

      3.      Absent a showing of good cause by the Requesting Party, the following categories of ESI need not be preserved:

          a.      Deleted, slack, fragmented, or other data only accessible by forensics.

          b.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

          c.      On-line access data such as temporary internet files, history, cache, cookies, and the like.

          d.      Data in metadata fields that are frequently updated automatically, such as last-opened dates.

          e.      Back-up data that are substantially duplicative of data that are more accessible elsewhere.

          f.      Server, system or network logs.

          g.      Data remaining from systems no longer in use that is unintelligible on the systems in use.

          h.      Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), **provided** that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage), exclusive of text messages.

          i.      Text messages, except that text messages of custodians identified under Paragraph C-1 shall be preserved.

**E.**      **ESI Discovery Procedures**

      1.      <u>On-site Inspection of Electronic Media</u>. An on-site inspection of any party's electronic media including custodial and non-custodial sources of ESI shall not be permitted

absent a demonstration by the Requesting Party of specific need and good cause or by agreement of the Parties.

    2.    <u>Search Methodology</u>. The Parties shall timely attempt to reach an agreement on appropriate search terms, or appropriate computer- or technology-aided methodology, as necessary and appropriate. The Parties shall work cooperatively to reduce the time, cost, and expense of any computer- or technology-aided methodology deployed, including the scope of data and custodial and non-custodial records search through such methodology. The Parties shall cooperate in revising the appropriateness of the search terms or computer- or technology-aided methodology as necessary and appropriate to reduce the time, burden, and expense of the discovery process.

In the absence of agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, the following procedures shall apply:

    a.    On written request from the other party, a Producing Party shall disclose the search terms or queries, if any, and methodology that it used to locate ESI likely to contain discoverable information. In the event of a dispute regarding the scope of a Producing Party's production, the parties shall meet and confer to attempt to reach an agreement on the Producing Party's search terms and/or other methodology.

    b.    In the event of a dispute regarding the scope of a Producing Party's production, if search terms or queries were used to locate ESI likely to contain discoverable information, a Requesting Party is entitled to no more than five (5) additional queries to be used in connection with further electronic searches absent a showing of good cause or agreement of the parties. The 5 additional queries, if any, must be provided by the Requesting Party within thirty (30) days of any dispute regarding the scope of a Producing Party's production.

    c.    Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. Absent a showing of good cause, each search term or query returning more than 15,000 individual search results are presumed to be overbroad.

    d.    The Producing Party shall search both non-custodial data sources and ESI maintained by the custodians identified above as necessary and appropriate.

**F.    Production Format**

    1.    <u>Electronic Documents</u>. All Electronic Documents shall be produced in Native Format, unless the parties expressly agree otherwise. The Producing Party shall take reasonable steps to produce relevant, non-privileged attachments to Electronic Documents contemporaneously and in sequential order. Accordingly, the Producing Party shall take

reasonable steps to ensure that all Electronic Documents attached to an e-mail are to be produced contemporaneously and sequentially immediately after the parent e-mail.

    a.    Production of Metadata Load File. The Producing Party will provide the following metadata to the extent available, for all ESI produced: beginning Bates number; ending Bates number; start attachment; end attachment; custodian or source; author; creation date of document; last modification date of document; last saved date of document; last printed date of document; confidentiality endorsements; original file path; original file name; file type/file extension; MD-5 hash value; title; page count; and file path and file name. The Producing Party shall provide this information as a standard delimited ASCII text file using the standard Concordance delimiters (ASCII value (020) or ¶ for the field separator, ASCII value (254) or þ for the text qualifier, and ASCII value (174) or ® for a line break).

    b.    Metadata for E-Mail. In addition to the metadata called for in Sub-section a above, to the extent available, for all email produced, the Producing Party will also include the following as fielded metadata in the metadata load file: subject; from; to; carbon copies; blind carbon copies; date sent; time sent; date received; time received; attachment file name; begin attachment; and end attachment. Family relationships among email and attachments will be maintained by ensuring that attachments immediately follow their parent email and setting the "begin attachment" and "end attachment" metadata fields appropriately.

    c.    Processing Time Stamps. All metadata produced which references a time, such as the time an email message was sent or received, shall be normalized to the Eastern Standard Time (EST) time zone.

    2.    <u>Hard-Copy Documents</u>. All Hard-Copy Documents shall be OCR'd prior to being produced. They shall be produced as black and white, Group IV compression, single-page TIFF images, at not less than 300 dpi resolution with extracted text in a .TXT file and a Load File containing the document boundaries (BEGATT, ENDATT) and a path to the extracted text files. Reasonable efforts shall be used to scan the pages at or near their original size and so that the image appears straight and not skewed. Physically oversized originals, however, may appear reduced. Hard-Copy Documents shall be produced as maintained in the usual course of business, including maintaining, to the extent reasonably possible, attachments, notes, etc.

    3.    <u>Redactions</u>. For all Electronic Documents where text has been redacted, such documents will be produced as if they are Hard-Copy Documents as set forth is paragraph F(2) above. Additionally, all such documents will be OCR'd after being redacted and the resulting extracted text shall be produced in a .TXT file. Additionally, Metadata for these redacted native documents will be produced in a separate DAT file. For all Hard-Copy Documents where text has been redacted, the same procedure will be followed. Specifically, the documents will be OCR'd after being redacted and the resulting extracted text shall be produced in a .TXT file.

      4.      <u>Databases</u>. If requested, the Parties shall identify and describe Databases that contain Electronic Data responsive to document requests, as well as provide a summary of the type of responsive Electronic Data in each Database. The Parties shall cooperate to produce responsive Electronic Data from any such Database in a reasonably useable production format.

      5.      <u>Custodian Identification</u>. The Parties agree to cooperate reasonably to identify the Custodian of each produced Document for custodial documents where custodian information is not otherwise available.

**G.     Production Specifications**

      1.      <u>Generally</u>. The Parties will cooperate to ensure that the logistics of production are efficient and economical, including production media, Bates Numbering, Load Files and general organization of produced Documents.

      2.      <u>De-duplication</u>. To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) reside within a party's data set, each party shall produce only a single copy of a responsive document. This de-duping should be done only on exact duplicative documents, and only documents where the main parent document and the attachments are exactly the same will be considered exact duplicates.

      3.      <u>Production Media</u>. Documents shall be produced on external hard drives or readily accessible computer or electronic media, *e.g.*, CDs or DVDs ("Production Media"). The Production Media shall identify: (a) the Producing Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

      4.      <u>Bates Numbering</u>. Each Document produced in this Litigation will be named according to the Bates Number associated or assigned to the first page of said Document, *e.g.*, ABC0000001.xls, and its original file name, if it exists, will be included as a field in the Load File.

**H.     Privilege and Inadvertent Disclosures of Privileged or Protected Materials**

      1.      With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

      2.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

      3.      If information subject to a claim of attorney-client privilege, attorney work product or any other ground on which production of such information should not be made to any Party is inadvertently produced to such Party(ies), such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege, work product or other ground for withholding production to which the Producing Party would otherwise be entitled so long as the Producing Party took reasonable steps to prevent disclosure.

   4. If a claim of inadvertent production is made with respect to information then in the custody of another Party, that Party shall promptly return to the claiming Party or person that material as to which the claim of inadvertent production has been made, and the Receiving Party shall not use such information for any purpose until further order of the Court.

   5. The Party returning such material may then move the Court for an order compelling production of the material, but said motion shall not assert as a ground for entering such an order the fact or circumstance of the inadvertent production or the care taken by the Producing Party in relation to any production. In addition, production by a Party of information subject to such a claim of attorney-client privilege or attorney work product shall not constitute a waiver of or estoppel as to any such claim as to any other information, related or otherwise.

**I.** **Execution**

   1. This Stipulation may be executed in counterparts and each such counterpart shall be deemed an original.

[Remainder of Page Left Intentionally Blank]

Case 1:17-cv-01657-GLR   Document 83   Filed 05/25/18   Page 9 of 10

Dated: May 25, 2018

STIPULATED TO AND AGREED TO BY:

For Defendant  /s/ *Jason R. Foltin*
Sara E. Gross (27704)
Chief Solicitor
Jason R. Foltin (29855)
Assistant Solicitor
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
(410) 396-3947
sara.gross@baltimorecity.gov

*Attorneys for the Mayor and City Council of Baltimore*

9

Dated: May 25, 2018

STIPULATED TO AND AGREED TO BY:

| | |
|---|---|
| For Plaintiffs | __/s/ Peter K. Hwang_____ |
| | Peter K. Hwang |
| | Charley C. Sung |
| | Sung & Hwang LLP |
| | 9256 Bendix Road, Suite 109 |
| | Columbia, Maryland 21045 |
| | |
| | __/s/ Ray Shepard_____ |
| | Ray Shepard |
| | The Shepard Law Firm LLC |
| | 1406B Crain Highway, Suite 102 |
| | Glen Burnie, Maryland 21061 |