IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHAE BROS., LLC, et al., | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. GLR-17-1657 |
| MAYOR & CITY COUNCIL OF BALTIMORE, | : | |
| | : | |
| Defendant. | | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Mayor & City Council of Baltimore's (the "Mayor and City Council") Motion for a Declaratory Judgment Regarding the Damage Cap (ECF No. 58). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will deny the Motion.

### I. BACKGROUND[1]

On March 3, 2017, Plaintiffs filed a 264-count Complaint in the Circuit Court for Baltimore City, Maryland against the Mayor and City Council, BPD Defendants,[2] former Baltimore City Mayor Stephanie Rawlings-Blake, the City of Baltimore, and the State of Maryland. (ECF No. 2). Defendants removed the case to this Court on June 19, 2017. (ECF No. 1).

---

[1] The Court set forth the facts of this case in further detail in its March 30, 2018 Memorandum Opinion. (See ECF No. 55). The Court repeats only facts necessary to resolve the pending Motion.

[2] The Court retains the definitions of capitalized terms defined in its March 30, 2018 Memorandum Opinion.

On March 30, 2018, the Court granted the State of Maryland's and BPD Defendants' Motions to Dismiss. (Mar. 30, 2018 Mem. Op. at 24, ECF No. 55). The Court also granted in part and denied in part the Mayor and City Council's Motion to Dismiss. (Id.). Only Plaintiffs' claims under the Maryland Riot Act (the "Riot Act"), Md. Code Ann., Pub. Safety ["PS"] § 14-1001 et seq. (West 2018), against the Mayor and City Council survived the Motions to Dismiss. (Id. at 7–13).[3]

On April 13, 2018, the Mayor and City Council filed a Motion for a Declaratory Judgment Regarding the Damage Cap. (ECF No. 58). Plaintiffs filed an Opposition on May 4, 2018. (ECF No. 73). On May 16, 2018, the Mayor and City Council filed a Reply. (ECF No. 78).

## II. DISCUSSION

### A. Applicable Law

The Declaratory Judgment Act, 28 U.S.C. § 2201 (2018), grants federal district courts discretion to entertain declaratory judgment actions. See Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). District courts have "discretion to entertain a declaratory judgment action if the relief sought (i) 'will serve a useful purpose in clarifying and settling the legal relations in issue' and (ii) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" First Nationwide Mortg. Corp. v. FISI Madison, LLC, 219 F.Supp.2d 669, 672 (D.Md. 2002) (quoting Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994)).

---

[3] On April 27, 2018, Plaintiffs filed a First Amended Complaint, (ECF No. 65), which added three new Plaintiffs: Lee L&M, Inc., Three Brothers Spirits, Inc., and Jayrevapuri, LLC, (1st Am. Compl. at 1, ECF No. 65).

2

**B.      Analysis**

The Mayor and City Council maintain that the Local Government Tort Claims Act's (the "LGTCA") damages cap, Md. Code Ann., Cts. & Jud. Proc. ["CJP"] § 5-303(a)(1) (West 2016)[4] applies to Plaintiffs' Riot Act claims. As a result, they assert, each individual Plaintiff's claim is limited to $200,000.00 and all of Plaintiffs' claims are limited to $500,000.00 total. Plaintiffs vigorously dispute these assertions.[5] Plaintiffs submit that the express language of the Riot Act dictates that they recover full, actual damages, and therefore, the LGTCA damages cap does not apply. The Court agrees with Plaintiffs.

Under Maryland law, "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." State v. Neiswanger Mgmt. Servs., LLC, 179 A.3d 941, 951 (Md. 2018) (quoting Lockshin v. Semsker, 987 A.2d 18, 28 (Md. 2010)). A court's analysis, therefore, "begins with the plain meaning of the statute." Id. If the Legislature's intent is clear from the language of the statute, the court's inquiry as to legislative intent ends and the court "appl[ies] the statute as written, without

---

[4] On October 1, 2015, the LGTCA damages cap increased to $400,000.00 for each individual claim and $800,000.00 for claims arising out the same occurrence. See 2015 Md. Laws, ch. 131. This change does not apply to Plaintiffs' claims, however, as they accrued in April 2015. See id. ("[T]his Act shall be construed to apply only prospectively and may not be applied or interpreted to have any effect on or application to any cause of action arising before the effective date of this Act.").

[5] Plaintiffs counter with three specific arguments: (1) the LGTCA damages cap does not apply to their Riot Act claims; (2) if the damages cap does apply, then Plaintiffs did not sustain their damages in a single occurrence; and (3) if Plaintiffs' claims are a single occurrence, then the LGTCA damages cap violates Article 19 of the Maryland Declaration of Rights as applied to their Riot Act claims. Because the Court agrees with Plaintiffs' first argument, the Court does not address their other arguments.

resort to other rules of construction." Lockshin, 987 A.2d at 28–29 (quoting Bd. of Educ. of Balt. Cty. v. Zimmer-Rubert, 973 A.2d 233, 241 (Md. 2009)). The court does not "add or delete language." Haile v. State, 66 A.3d 600, 611 (Md. 2013) (quoting Lockshin, 987 A.2d at 29). Nor does it "limit or extend" a statute's application. Id. (quoting Lockshin, 987 A.2d at 29).

Plaintiffs contend that the Riot Act, by its plain language, provides for the recovery of "actual damages." The Mayor and City Council counter that the LGTCA damages cap expressly applies to all torts. Because the Riot Act sounds in tort, they maintain, the LGTCA damages cap applies to Plaintiffs' Riot Act claims. The Court first examines the plain language of the LGTCA.

### A. The LGTCA

The LGTCA damages cap provides, in relevant part, that: "the liability of a local government may not exceed $200,000 per individual claim, and $500,000 per total claims that arise from the same occurrence for damages resulting from tortious acts or omissions." CJP § 5-303(a)(1). The damages cap applies broadly to "tortious acts or omissions." Id. Indeed, the Maryland Court of Appeals recently reaffirmed that "there is no exception in the statutory language [of the LGTCA damages cap] for any category of torts." Espina v. Jackson, 112 A.3d 442, 451 (Md. 2015) (quoting Ashton v. Brown, 660 A.2d 447, 466 n.19 (Md. 1995)).

Maryland's appellate courts have not yet weighed in on whether the LGTCA damages cap applies to Riot Act claims, but they have held that the LGTCA applies to constitutional torts. Espina v. Prince George's Cty., 82 A.3d 1240, 1257

4

(Md.Ct.Spec.App. 2013), aff'd sub nom. Espina v. Jackson, 112 A.3d 442 (Md.). They have not, however, extended the LGTCA damages cap to statutory torts.[6]

The Riot Act imposes liability on a municipality: (1) "if a structure or personal property is stolen, damaged, or destroyed" during an event of civil unrest; (2) the municipality "had good reason to believe that the [event] was about to take place or, having taken place, had notice of the [event] in time to prevent the theft, damage, or destruction"; and (3) the municipality "had the ability, either by use of the . . . municipal corporation's police or with the aid of the residents of the . . . municipal corporation, to prevent the theft, damage, or destruction." PS §§ 14-1001(b), 14-1002(a). The Court of

---

[6] The Mayor and City Council contend that the LGTCA damages cap applies to statutory torts, like the Riot Act. In support of this argument, they cite Green v. N.B.S., Inc., 976 A.2d 279 (Md. 2009). The Mayor and City Council's reliance on Green is misplaced for at least two reasons.

First, in Green, the Maryland Court of Appeals held that the statutory cap on noneconomic damages in a personal injury action, CJP § 11-108 (2006 Repl. Vol.), applies to the Consumer Protection Act—a statutory tort. 976 A.2d at 288. But the language of the LGTCA damages cap is materially different from that of the personal injury noneconomic damages cap. Compare CJP § 5-303(a)(1) (limiting the liability of local governments to "$200,000 per an individual claim, and $500,000 per total claims that arise from the same occurrence for damages resulting from tortious acts or omissions"), with CJP § 11-108(b)(1)–(3) (limiting recovery in a personal injury action to $350,000.00 for certain claims and $500,000.00 for others depending on when the cause of action accrued; further limiting recovery to "each direct victim of tortious conduct and all persons who claim injury by or through that victim"). Second, each damages cap has a different purpose. The personal injury damages cap was enacted "to promote the availability and affordability of liability insurance in Maryland." Green v. N.B.S., Inc., 952 A.2d 364, 375 (Md.Ct.Spec.App. 2008) (quoting Oaks v. Connors, 660 A.2d 423, 428 (Md. 1995), aff'd, 976 A.2d 279). The purpose of the LGTCA, by contrast, is to "provide a remedy for those injured by local government officers and employees, . . . while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts." Rounds v. Md.-Nat. Capital Park & Planning Comm'n, 109 A.3d 639, 649 (Md. 2015) (quoting Ashton v. Brown, 660 A.2d 447, 466 (Md. 1995)).

5

Appeals has explained that it is "abundantly clear that the core of the statutory liability for riot damages is <u>negligence</u> on the part of those in authority who are charged with the responsibility and are vested with the power to maintain public peace." <u>City of Baltimore v. Silver</u>, 283 A.2d 788, 792 (Md. 1971) (emphasis added). Negligence is itself a common law tort, and it is also an essential element to many other tort claims. In other words, Riot Act claims sound in tort. Given that "there is no exception in the statutory language [of the LGTCA damages cap] for any category of torts," <u>Espina</u>, 112 A.3d at 451 (quoting <u>Ashton</u>, 660 A.2d at 466 n.19), the cap appears to apply to Riot Act claims. <u>Haile</u>, 66 A.3d at 611 (quoting <u>Lockshin</u>, 987 A.2d at 29). But this is not the end of the Court's inquiry. It must also consider the text of the Riot Act.

**B.** **<u>The Riot Act</u>**

The Riot Act, when describing the damages an injured party may seek, states that "the injured party may <u>recover actual damages sustained</u> in a civil action against the county or municipal corporation of the State in which the riot occurred." PS § 14-1001(b) (emphasis added); see <u>City of Hagerstown v. Sehner</u>, 37 Md. 180, 188–89. (1872) (quoting an earlier version of the Riot Act, which stated "the <u>full amount of the damage so done</u> shall be recoverable by the sufferer or sufferers" (emphasis added)). The General Assembly's intent could not be clearer—under the Riot Act, an injured party is entitled to "actual damages sustained." By its plain language, therefore, the Riot Act provides for the recovery of actual damages—without exception. <u>Haile</u>, 66 A.3d at 611 (quoting <u>Lockshin</u>, 987 A.2d at 29).

6

Plaintiffs next contend that applying the LGTCA damages cap to Riot Act claims effectively repeals its damages provision. The LGTCA, Plaintiffs maintain, only repealed local government statutes that were inconsistent with the LGTCA, and not state statutes like the Riot Act.[7] The Court finds Plaintiffs' argument persuasive.

Here, the uncodified repealer provision of the LGTCA states: "[A]ny provision or portion of a statute, law, ordinance, or charter provision enacted by <u>local government</u> which is inconsistent with any provision of [the LGTCA] is repealed." 1987 Md. Laws, ch. 594, § 2 (emphasis added). Although it broadly applies to any part of any enactment that is inconsistent with the LGTCA, it limits its scope to local government enactments only. The General Assembly—state government—passed the Riot Act. The LGTCA's repealer provision, therefore, compels the conclusion that the LGTCA damages cap does not supersede the Riot Act's damages provision. <u>Lockshin</u>, 987 A.2d at 28–29 (quoting <u>Zimmer-Rubert</u>, 973 A.2d at 241); <u>cf.</u> <u>Silver</u>, 283 A.2d at 799 (citing <u>A & B Auto Stores v. Newark</u>, 248 A.2d 258, 272 (N.J.Super.Ct. Law Div. 1968)) (noting that under the Riot Act, "the City's liability is not grounded on a common law action for tort but upon a statute . . . which created the cause of action" and that "the affirmative creation of a cause of action against a municipality by the Legislature impliedly eliminates the defense of municipal immunity to that cause of action").

---

[7] The Mayor and City Council argue that damages caps that "apply to causes of action . . . that were created before the enactment of the cap do not 'repeal' the previous cause of action." (Def.'s Reply at 2, ECF No. 78). The Mayor and City Council do not cite any statute, legislative history, or case law for this proposition. Further, Plaintiffs argue that the LGTCA damages cap effectively repeals the Riot Act's damages provision. They do not contend that the LGTCA damages cap repealed the Riot Act as a cause of action.

7

Thus, the Court concludes that the LGTCA damages cap does not apply to Plaintiffs' Riot Act claims. Accordingly, the Court will deny the Mayor and City Council's Motion.

### III. CONCLUSION

For the foregoing reasons, the Court will deny the Mayor and City Council's Motion for a Declaratory Judgment Regarding the Damage Cap (ECF No. 58). A separate order follows.

Entered this 18th day of December, 2018

/s/
George L. Russell, III
United States District Judge